**In the Matter of Simion KSENZOWSKI, Debtor.**

**Hukumad CHAUDHRY and Haridas Shah, Plaintiffs,**

**v.**

**Simion KSENZOWSKI, Defendant.**

**Bankruptcy No. 183–31493.
Adv. No. 183–0402.**

United States Bankruptcy Court,
E.D. New York.

Nov. 27, 1985.

Robert Tauber, Brooklyn, N.Y., for debtor.

Manojkumar D. Patel, New York City, for plaintiffs Chaudhry & Shah.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Pending before the Court are a variety of motions and cross-motions. Because so

many duplicate each other, they have taken on a Byzantine complexity, compounded by the misstatements respecting the record in the papers signed by Manojkumar D. Patel, Esq., attorney for the plaintiffs. (*See* e.g. pp. 833–838, *infra*) This has created enormous difficulty for the Court in recreating the procedural history of this case pertinent to the pending motions which raise the following issues:

(1) Should the Court vacate its Order of July 3, 1984 closing the case?

(2) Is the defendant, regardless of how the prior issue is decided, entitled to dismissal of the complaint (a) for failure to state, in timely fashion, a valid claim under 11 U.S.C. § 727, and/or (b) for failure of the plaintiffs to prosecute their cause of action diligently?

(3) Have the plaintiffs furnished grounds for disqualifying Robert Tauber, Esq. from representing the defendant?

(4) Are plaintiffs entitled for any reason to a judgment by default against the defendant?

(5) Should sanctions be imposed on Patel and his clients for the manner in which this case has been litigated and for the numerous misstatements prejudicial to the defendant contained in the papers signed by Patel?

## PROCEDURAL BACKGROUND

### Plaintiffs' Objection to Defendant's Discharge

On August 1, 1983, the defendant herein, Simion Ksenzowski, filed a Petition for re-

lief under Chapter 7 of Title 11. The time to file objections to his discharge expired October 31, 1983. Ksenzowski filed *pro se.*

On October 24, 1983, the plaintiffs, Hukumad Chaudhry and Haridas Shah, from whom Ksenzowski, in partnership with one Barbara Usoskin, had purchased a stationery store about one year earlier, filed a complaint "pursuant to 11 U.S.C. § 727." The complaint alleged the sale of the store to Ksenzowski and Usoskin, a default on the notes given as part of the purchase price and requested judgment against the defendants in the amount of $26,500.00.[1]

At the first pre-trial hearing on November 30, 1983, in both cases, at which Barbara Usoskin and Ksenzowski both appeared *pro se*, the Court observed during the Usoskin pre-trial that the complaint failed to state a cause of action under § 727, whereupon Patel announced his intention to amend it, to which the Court responded, "Alright".

Thereafter, on December 27, 1983, Patel served Ksenzowski (and Usoskin) with an amended complaint containing the same allegations as his first complaint, but adding, in *haec verba*, the text of 11 U.S.C. § 727(a)(1), (a)(2), (a)(3), (a)(4) and (a)(5). The complaint contains a number of other allegations of misconduct ending with the allegation that Ksenzowski has obtained money and credit from plaintiffs and other creditors "by materially false statement in writing respecting financial position of the debtors/defendants" and, therefore, "they obtained this business property and loanmoney by fraud."[2]

In the letter to the Clerk of the Bankruptcy Court enclosing the amended com-

---

**1.** The complaint consistently refers to the defendants in the plural, because it was prepared to be filed as a single complaint against both Ksenzowski and his partner, Barbara Usoskin who had filed a petition for relief under Chapter 7 of Title 11. It was subsequently prosecuted independently against each.

**2.** The other allegations are that Ksenzowski "has committed a violations of conditions precedent for a discharge in bankruptcy"; "has failed to perform all his duties"; "has failed to perform

his duties honestly, and has failed to make any efforts for proper collection and distribution of his property and claims"; "has omitted so many items of a household furniture and equipments, and other luxurious items from the schedule of property"; has taken "entire and all cash of their business for their personal uses and converted it as personal property, and used it all for their enjoyment and luxurios (sic) lifestyle" and, thereafter, filed bankruptcy "with a malafide

plaint in this and in the *Usoskin* proceeding, Patel wrote:

"At this hearing [on November 30, 1983] the plaintiffs requested a permission of the court to allow the plaintiffs to amend their complaint and to serve amended complaint upon the defendents (sic) by mail. Accordingly, the Hon. Judge has granted a permission to amend complaint and serve the same upon the defendents".

Letter of December 27, 1983.

### The Discovery and Trial Schedule

At the pre-trial hearing on February 7, 1984, the Court set both the *Usoskin* and *Ksenzowski* cases down for trial on April 30, 1984 (provided that Ksenzowski had filed an answer by that date), after satisfying itself that in the companion *Usoskin* case discovery would be completed by that date.

On February 22, 1984, Ksenzowski filed an answer to plaintiffs' amended complaint. He filed it *pro se*, duplicating an answer previously filed by Usoskin, prepared for her by an attorney, Richard Koral, Esq., a personal friend. As affirmative defenses, the answer pleaded failure to state a cause of action and failure to plead with particularity as required by FRCP 9(b) and Bankruptcy Rule 7009.

On April 30, 1984, Ksenzowski appeared for trial, as did Usoskin and her attorney, Koral. Neither Patel nor his clients were present. It was later learned that Patel was on vacation in India where he had gone on March 23rd or 24th, 1984 and from where he did not return until May 14th, 1984. (Application to Set Aside Default Order and to Reclose Adversary Proceeding to Calendar, dated July 26, 1984 ("July 26, 1984 Application"), at par. 6.) On April 30, 1984, the Court adjourned the trial peremptorily to May 17, 1984.

When Patel left for India, he closed his office. Just prior to doing so, on March 19, 1984 he sent Koral, by mail, "Notice for Discovery and Inspection" in both the

intention to defraud the plaintiffs and all other

*Usoskin* and *Ksenzowski* cases (although Koral was the attorney of record only in the *Usoskin* case). (Affidavit of Service signed by Patel attached to "Notice for Discovery and Inspection"). The demand called for the production within the next 30 days at Patel's office of all the defendant's business and personal financial records for the previous five years. It also demanded an explanation of the reasons for the business losses, the unpaid debts and the bankruptcy filing.

### The Case is Closed

After plaintiffs failed to appear for trial on April 30, 1984, Koral moved in both the *Usoskin* and *Ksenzowski* cases to dismiss the complaint (a) for plaintiffs' failure to prosecute, (b) for plaintiffs' failure to state a cause of action, and (c) for plaintiffs' failure to plead with particularity as required by FRCP 9(b). (Notice of Motion for Dismissal of Adversary Proceeding). Koral originally prepared the motion on behalf of Usoskin and, at her suggestion, filed it also on behalf of Ksenzowski who gave his consent thereto. This was Koral's first and only appearance in this proceeding on behalf of Ksenzowski. (Application of Richard Koral, dated November 29, 1984)

Both motions were made returnable on May 17, 1984, the date to which the Court had adjourned the trial. An affidavit of service dated May 2, 1984 attests to the fact that the motions were mailed to Patel's office. He claims, however, not to have found them when he returned from India on May 14th and reopened his office.

When Patel returned on May 14th, he made no inquiry at the court or of Koral or of anyone else respecting the adjourned trial date, nor did he inspect the Court's docket, but he did communicate with Koral to push his stale discovery demand, which resulted in Usoskin making available to him in the courthouse on May 25th, the papers she had collected in response to the

creditors".

earlier demand. Evidently, Ksenzowski was not present and produced no papers.[3]

On June 3rd, Patel claims to have written Koral (which Koral denies), with respect to both the *Usoskin* and *Ksenzowski* cases complaining of the inadequacy of the production to date stating that "we can not proceed further with this case, until you or the debtors produce and submit our office this accounts and documents. Therefore, you are again requested to send it immediately by return of mail. As soon as we will receive these documents from you, we will proceed with this case." The same letter which Koral acknowledges receiving, was sent on July 26, 1984.

On May 17, 1984, for the convenience of the Court, both the trial date and the motion to dismiss were adjourned to June 7th, 1984. Koral has filed an affidavit reciting that on May 17th, 1984, he, Usoskin and Ksenzowski were all in the court prepared to proceed. (Application of Richard Koral, dated November 29, 1984 at par. 7). Patel acknowledges that neither he nor his clients were present. (Patel's Application dated December 27, 1984, at par. 7).

On June 7th, when the Court called the *Usoskin* and *Ksenzowski* cases for trial, no one was present in court on either matter. Patel was not present, nor were his clients. This information was recorded in the Court's docket. The Court then marked both adversary proceedings "Closed."

With the proceedings in this posture, there was no need to rule on the pending motions to dismiss and no action was taken on them. A formal Order closing each case was signed on July 3, 1984, and recorded on the respective docket, but no copy was sent any of the parties.

3. In Patel's Affirmation of December 3, 1984, he states the following with respect to what occurred on May 25, 1984:

"The defendant's attorney failed to cooperate and produce accounts and documents in Discovery and Inspection proceeding on May 25, 1984. The defendant *failed to appear before this Court* all the time.

\* \* \* \* \* \*

The defendant's *failure to appear in the court* and failure to produce all accounts and documents asked by it plaintiffs by their notice of

## The Motion to Reopen The Proceeding

On July 26, 1984, Patel communicated with this Court for the first time since February 7, 1984 to find out the next date of hearing and trial. (July 26, 1984 Application, at par. 8). When he learned that the cases had been closed three weeks earlier, he moved to set aside the orders of default in the *Usoskin* and *Ksenzowski* case, filing identical documents in each. Only Koral was served; no service was made on Ksenzowski. (Affirmation of Service, dated July 27, 1984, attached to "Notice of Motion to Set Aside a Default Order and to Restore Calendar" (sic). (Tr. 3/7/85, p. 24–25).

The only statement on the merits of the plaintiffs' cause of action contained in Patel's moving papers to reopen this proceeding was the following:

"The plaintiffs have meritorious grounds and reasons to have a final order and judgment against the defendent in this case. The plaintiffs are secured creditors and they are holder of a promissory notes and a security agreement. The defendent has no good legal grounds and any reasons to substantiate and support their bankruptcy petition. The defendent has no certified accounts at all to show the validity of their debts and the defendent has no documents to prove their alleged debts and unpaid loans. The defendent has already filed a bankruptcy petition before this one and the defendent has filed this bankruptcy petition with a malafide intention to escape the liability of the plaintiffs' secured debt. Therefore, the plaintiff must be

discovery and inspection dated March 19, 1984, is a prima facie case to deny this motion". (Emphasis supplied).

Since Koral, according to his affidavit, first undertook to represent Ksenzowski when he filed the motion on his behalf on May 9th and was not his attorney when Patel mailed his demand for discovery and inspection two months earlier on March 19, 1984, it seems quite likely Ksenzowski knew nothing either of the demand or of the production made on May 25th.

provided sufficient opportunity to prosecute this adversary proceeding against the defendent's dischargeability and dismissing defendent's petition."

In the *Usoskin* case, Koral opposed Patel's motion, but in the *Ksenzowski* case he did nothing. Koral also asked in his opposition papers for permission to withdraw as counsel for Usoskin and requested the Court allow Usoskin an opportunity to obtain replacement counsel. Although Koral replied only on behalf of Usoskin, Patel filed an answer in the *Ksenzowski* case, as though Koral had submitted the same reply on Ksenzowski's behalf.

On September 14th, 1984, Robert Tauber, Esq. was formally substituted for Koral as the attorney for Usoskin. However, Koral was not relieved as counsel to Ksenzowski until December 12, 1984.

On September 18, 1984, Patel's motions to reopen in the *Usoskin* and *Ksenzowski* cases were scheduled to be heard. Tauber was unavoidably absent due to a family emergency. He subsequently advised the Court that he consented to the relief requested, of which the Court advised Patel. Patel then served *Koral*, not Tauber, with a letter enclosing copies of the orders he was submitting reopening *both* the *Usoskin* and *Ksenzowski* cases. The proposed Order sent Koral contained a blank space for the Court to fill in with a new hearing date. (Letter dated September 26, 1984 from Patel to Judge Goetz). The date inserted by the Court was October 25, 1984 at 2:00 p.m. However, the records of the Court do not reflect that Patel served anyone with notice of entry of the Order of October 2, 1984 containing that date and reopening the proceeding.

On October 25, 1984, the date fixed for trial in the Court's order, Usoskin was in court with Mr. Tauber; Ksenzowski was not present. When the Court suggested that the two cases be consolidated for trial, it first learned that Mr. Tauber had never represented Ksenzowski. Plaintiffs' attorney then moved unsuccessfully for judgment by default against Ksenzowski, a motion he is now renewing.[4]

After reviewing the file, the Court concluded that its order of October 2nd, 1984, was based on a mistake of fact, and that Tauber had never been the attorney for Ksenzowski and had no authority to agree to anything affecting him. Acting *sua sponte*, the Court vacated its Order of October 2nd, 1984, saying in an Opinion, dated November 15, 1984:

"It is the intention of the Court to restore this matter to the status quo prevailing before the motion [to reopen] was granted. Accordingly, this Court is setting down for hearing on December 12, 1984 at 2:00 p.m. the motion of the plaintiffs to set aside the default order dismissing the adversary proceeding and, in the interests of judicial economy, will hear at the same time the motion of the defendant to dismiss. Any answering papers with respect to either motion not already filed, should be served and filed not less than five days before the hearing date. Mr. Ksenzowski is directed to appear in this court on that date either pro se or with counsel and be prepared to present his position to the Court."

Ksenzowski, whose native language is Russian and who speaks very little English, filed nothing prior to the hearing on December 12, 1984. On that date, Koral was formally relieved, and Mr. Tauber substituted as counsel for Ksenzowski. Stating he had been retained by Ksenzowski just two days earlier, Mr. Tauber requested and

---

**4.** In the *Usoskin* case, Tauber waived the pending motion to dismiss and a trial on the merits was held. No decision has as yet been issued in that case because briefs were only filed recently. Therefore, a joint trial in the *Usoskin* case and this case is now a physical impossibility. Nevertheless, Patel, in various papers, alludes to a pending motion for a joint trial, although the Court's records reflect no formal motion incorporating such a request. Moreover, the records in the *Usoskin* case negate any substantial economy and saving of judicial time from such a joint trial since the record in the *Usoskin* cases is concerned with her personal financial situation, including her ownership of a cat, a dog, the rent she pays, the registration of her car in Pennsylvania, et cetera.

received, over Patel's strenuous objection, an enlargment of the time to file answering papers. Tauber was allowed to January 8, 1985, to deliver any further papers to plaintiffs; plaintiffs were given to January 23rd to respond and a hearing was scheduled for January 30, 1985.

In conformity with this timetable, Tauber filed papers opposing the motion to set aside the default and believing mistakenly that no answer has been filed to the plaintiffs' amended complaint, also cross-moved for leave to file an answer.

Overriding the schedule fixed by the Court, the plaintiffs, through their attorney Patel, filed an omnibus motion on January 2, 1985, which in addition to renewing all plaintiffs' previous requests, added a motion to disqualify Tauber and also one to enter judgment against the defendant for various minor derelictions. Tauber was served only with the bare Notice of Motion to which he replied. Omitted from the papers served on Tauber (contrary to an affidavit of service executed by Patel) was Patel's supporting affirmation consisting of nine closely typed pages and seven exhibits. Tauber was served only with the bare Notice of Motion. See pp. 835–837, *infra*.

When the inaccuracy of the affidavit of service and the failure to serve Tauber with all the papers was discovered at the hearing on January 30, 1985, all motions were adjourned to March 7, 1985, to allow Tauber an opportunity to reply to the complete document.

In his reply papers, Tauber specifically adopted the earlier papers filed by Mr. Koral "to dismiss the complaint for insufficiency and failure to prosecute." In conclusion, Tauber asks for sanctions pursuant to F.R.C.P. 11 and 28 U.S.C. § 1927:

"This motion, as well as [plaintiffs'] motion to vacate the order July 3rd, 1984 and its prosecution of the complaint herein and its failure to submit an adequate or sufficient complaint is a burden imposed upon this court and the defendant without legal justification. Therefore defendent requests costs, legal expenses and attorneys fees in the sum of $1,500.00 pursuant to Rule 11 of the Federal Rules of Civil Procedure and § 1927 of Title 28 of the United States Code."

Answer to Motion, dated December 28, 1984, at par. 11

For the reasons which follow, the Court is making the following disposition of the pending motions:

(1) The motion to reopen is denied; neither merit nor excusable neglect has been shown. Plaintiffs' pleadings are inadequate on their face. The Court is not vacating its Order of July 3, 1984 closing the case.

(2) Assuming *arguendo* that the motion to reopen is granted, the Court grants defendant's motion to dismiss (a) for failure to state a claim and (b) for failure to prosecute.

(3) Plaintiffs' motion to disqualify Tauber is denied.

(4) Plaintiffs' motions for judgment by default are frivolous and are denied.

(5) Sanctions are imposed on Patel and his clients for their conduct of this litigation, for the filing by Patel of a false affidavit of service and for the many statements which Patel has affirmed to be true that are contrary to fact.

## DISCUSSION

### I

What is in dispute here is the right of Ksenzowski to a discharge in bankruptcy of all his debts, including the money he acknowledges is owing to the plaintiffs. The plaintiffs misunderstand the nature of this proceeding when they iterate and reiterate that Ksenzowski is indebted to them. The existence of that debt is not challenged. The question here is whether plaintiffs have any meritorious grounds for the objection to the discharge of that debt in bankruptcy.

From the point of view of a debtor, the purpose of bankruptcy is to secure a discharge from his debts and to get a fresh start. As Congress recognized in enacting

the Bankruptcy Code, "[P]erhaps the most important element of the fresh start for a consumer debtor after bankruptcy is discharge. The discharge releases the debtor from his debts." H.R. Report No. 595, 95th Cong., 1st Sess. 118, 128 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5963, 6078, 6079, 6089. The "release of the honest, unfortunate, and insolvent debtor from the burden of his debts * * * in the interest of his family and the general public, is one of the main, if not the most important, objects of the [bankruptcy] law." *Shelby v. Texas Improvement Loan Co.*, 280 F.2d 349, 355 (5th Cir.1960) (citations omitted). *See* also *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

In line with this underlying policy, the grounds for objecting to a debtor's discharge are few and carefully defined (11 U.S.C. § 727), and the time for filing a complaint objecting to a discharge is deliberately kept short. Bankruptcy Rule 4004. Furthermore, the plaintiff has the burden of proof. Bankruptcy Rule 4005.

Pursuant to Bankruptcy Rule 4004, (which took effect on August 1, 1983), a complaint objecting to the debtor's discharge under Section 727(a) of the Code must be filed no later than sixty days following the first date set for the Section 341(a) meeting of creditors. In this case

the time to file a complaint under § 727(a) expired on October 31, 1983.[5] The Bankruptcy Court may only enlarge this time "to the extent and under the conditions stated in Rule 4004." Bankruptcy Rule 9006(b)(3). The only condition under which Rule 4004(a) permits such an extension is after hearing, on notice, on a motion made *before* the time for filing a complaint has expired. (Rule 4004(b)).

Ten grounds are listed in 11 U.S.C. § 727 for denying a discharge, of which only four are even remotely relevant to this case.[6]

■ Conduct, no matter how reprehensible, will not forfeit a discharge unless it is covered by one of the sections of 11 U.S.C. § 727. *In re Hughes*, 262 F. 500 (2d Cir.1919); *In re Little*, 65 F.2d 777 (2d Cir.1933); *In re Chamberlain*, 180 F. 304 (N.D.N.Y.1910); *In re Gentile*, 107 F.Supp. 476, 477 (W.D.Ky.1952). "A bankrupt is not to be denied a discharge on general equitable considerations. It can only be denied if one or more of the statutory grounds of objection are proved." *Shelby, supra*, 280 F.2d, at 355 (citations omitted).

II

*The Motion to Reopen the Dismissal For Failure to Prosecute*

■ When plaintiffs and their attorneys for the second time failed to appear for

---

**5.** This was likewise the date on which the right to file a complaint objecting under § 523(c) to the discharge of specific debts expired. Bankruptcy Rule 4007(c).

**6.** The relevant sections of 11 U.S.C. § 727 read:
(a) The Court shall grant the debtor a discharge, unless—
\* \* \* \* \* \*
(2) The debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this Title has transferred, removed, destroyed, mutilated, or concealed, who has permitted to be transferred, removed, destroyed, mutilated, or concealed—
(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition;
(3) The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which

the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
(4) The defendant knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account;
(B) presented or used a false claim;
(C) gave, offered, received or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
(D) withheld from an officer of the estate entitled to possession under this Title any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
(5) The debtor has failed to explain satisfactorily before determination of denial of discharge under this Paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; ..."

trial, the Court properly dismissed the case for failure to prosecute. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853 (2d Cir.1972); *Ali v. A & G Co., Inc.*, 542 F.2d 595 (2d Cir.1976); *Taub v. Hale*, 355 F.2d 201 (2d Cir.), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1924, 16 L.Ed.2d 1020, *reh'g denied*, 385 U.S. 924, 87 S.Ct. 225, 17 L.Ed.2d 148 (1966); *M & H Cosmetics v. Alfin Fragrances*, 102 F.R.D. 265 (E.D.N.Y.1984). The fact that the defendant also failed to appear on June 7th does not excuse the plaintiffs' absence. *Ali, supra*, 542 F.2d at 596. The defendant was ready to proceed on April 30, 1984 and also on May 17, 1984. Nor does the lack of notice from the Court of the adjourned trial dates excuse the plaintiffs' absence. "The responsibility for watching the progress of the trial calendar and of being ready to proceed when reached is on counsel and not on the clerk or the court". *Quagliano v. United States*, 293 F.Supp. 670, 671 (S.D.N.Y. 1968). It was the obligation of plaintiffs' counsel to apprise himself of the date to which the trial he knew had been scheduled for April 30th, 1984, had been adjourned.

The July 3, 1984 order closing the proceeding for failure to prosecute constituted a final order. "Dismissal for failure to prosecute, ... is a final judgment disposing of the matter...." 5 Moore's *Federal Practice*, ¶ 41.11[2], p. 41–148 (2d Ed.1980). Such an order is authorized by Bankruptcy Rule 7041, which incorporates FRCP 41. Unless otherwise specified in the order, such a dismissal is with prejudice.

To be relieved of the Order, the plaintiffs had to satisfy FRCP 60, made applicable to adversary proceedings by Bankruptcy Rule 9024. "For the purposes of this rule [Rule 9024] all orders of the Bankruptcy Court are subject to Rule 60 F.R.Civ.P." Advisory Committee Note to Bankruptcy Rule 9024.

Relief under FRCP 60(b) requires that the plaintiffs establish that they have a meritorious cause of action under § 727, that is, that they have solid grounds for opposing the debtor's discharge and that their default was due to "mistake, inadvertence, surprise or excusable neglect". These are the dual requirements of FRCP 60(b) which govern this motion to reopen.

■ Neither requirement is met here. The reason Patel and his clients, the plaintiffs, did not appear for trial either on the date first fixed by the Court, April 30, 1984, nor on the date to which the trial was adjourned, June 7th, 1984, was that Patel was on vacation on April 30, 1984, and no one informed him on his return of the new trial date. Neither reason rises to the level of "excusable neglect".

Assuming that it did, however, it would make no difference in the outcome because plaintiffs have no cause of action, let alone a meritorious cause of action. If the proceeding were reopened, the complaint would promptly have to be dismissed. Such dismissal would be mandated by the fact that no complaint setting forth a valid claim under 11 U.S.C. § 727 (or § 523) was filed before October 31, 1983.

Except for the allegations that "the defendents have not good legal and proper reasons to file petition for bankruptcy as the defendents have malifide (sic) intention to defraud the plaintiffs after the defendents took the business store", plaintiffs' original complaint sets forth a simple cause of action for failure to pay a series of notes. This is exactly the type of ordinary debt dischargeable in bankruptcy. The colorful language alleging "a malafide intention to defraud the plaintiffs" after the debtors took possession of the business they bought from the plaintiffs, adds nothing of legal significance. From a creditor's point of view, any recourse to bankruptcy may seem malafide. The complaint fails to state a cause of action under § 727.

■ The deficiency in the original complaint was not, and could not be, cured by the second complaint, which would be as inadequate as the first in alleging a cause of action under § 727, if not for the single allegation respecting failure to keep

records.[7] But this new ground comes too late. It is barred because made for the first time more than 60 days after the Section 341(a) meeting.

■ Additional or new grounds of objection may not be added by way of amendment filed after the deadline for filing complaints objecting to discharge has passed. *In re Tester,* 53 B.R. 97, CCH Bankruptcy Law Reports, ¶ 70–761 (Bankr.W.D.Va. 1985); *In re Herrera,* 36 B.R. 693, 694 (Bankr.D.Colo.1984); *In re Fisher,* 4 B.R. 517 (Bankr.S.D.Fla.1980). *cf. Paully v. Magnotti,* 182 F.2d 466 (2d Cir.1950). All that is permitted is amplification of the original grounds set forth in the complaint. *In re Klein,* 31 B.R. 947 (Bankr.E.D.N.Y. 1983).

As the authoritative text, *Collier on Bankruptcy,* notes in the 15th Edition:

"After expiration of the time fixed * * * for the filing of a complaint objecting to discharge, additional or new grounds of objection may not be added by way of amendment, unless the court first grants an extension of time or the debtor has concealed facts until that time, or the grounds would be sufficient for a revocation of the discharge. To permit an amendment which brings in a new ground of objection after the time fixed for filing complaints objecting to discharge under circumstances other than as noted above would be to defeat Bankruptcy Rule 4004(a) which is intended to compel diligent prosecution of objections and permit a prompt disposition of the question of the debtor's right to a discharge." (Footnotes omitted). *4 Collier on Bankruptcy,* ¶ 727.14[4] at pp. 727.-84–85.

FRCP 15(c), which is made applicable to adversary proceedings in bankruptcy by Bankruptcy Rule 7015 incorporates the same principle, permitting an amendment to relate back to the original pleading only when it arises "out of the conduct, transaction or occurrence set forth, or attempted to be set forth, in the original pleading."

■ Illustrative of how strictly the courts have applied the principle that, absent special circumstances, new specifications may not be added after expiration of the time to object to discharge is *Paully v. Magnotti,* 182 F.2d 466 (2d Cir.1950). In that case, objections had been made to the debtor's discharge on two grounds, one of which was he had failed to keep books of account from which his financial condition could be ascertained. After the time for filing objections had expired, the trustee sought to add as a new objection that the bankrupt had falsely alleged in his schedules that he had no books of account. Evidently, during the course of examining the debtor, the trustee had learned that some years prior to filing for bankruptcy the debtor had turned over his books and records to a third party as part of the sale of his business. The lower court refused to permit the requested amendment. The trustee successfully appealed on the ground that he did not know of the existence of the records until after the time for filing objections had expired. Despite the fact that the Second Circuit, speaking through Judge Learned Hand, described, "the added specification" as "closely akin * * * to the first, of the two existing speci-

---

**7.** Allegations simply in the general language of § 727 are insufficient to state a valid claim objecting to discharge except for an allegation that a debtor has failed to keep records. *Matter of Tumen,* 58 F.Supp. 210 (D.C.N.J.), *aff'd,* 146 F.Supp. 268 (3d Cir.1944); *See also, In re Leach,* 197 F.Supp. 32 (W.D.Ark.1960); *Schultz v. Manufacturers & Traders Trust Co.,* 32 F.Supp. 120 (W.D.N.Y.1940). Furthermore, when fraud is alleged, as in the case of the allegations which copy § 727(a)(2) and § 727(a)(4), details must be provided, particularizing the allegation. *Worthen Bank & Trust Co. v. Hart,* 461 F.Supp. 328 (E.D.Ark.1978); *cf. Gissen v. Colorado Interstate Corp.,* 62 F.R.D. 151 (D.C.Del.1974); *DuPont v. Wyly,* 61 F.R.D. 615 (D.C.Del.1973). As for the claim that money or property was obtained by a materially false statement in writing, it would constitute a ground under § 523(c) for denial of the dischargeability of a specific debt, but Congress deliberately changed the law, so that a discharge from all debts can no longer be denied on that ground. *Matter of Lovich,* 117 F.2d 612 (2d Cir.1941); *Matter of New York Fluorescent Light Co., Inc.,* 44 F.Supp. 54 (E.D.N. Y.1942)

fications", *id.*, at 468, it directed the referee in bankruptcy not to permit the new specification to be filed, "if the bankrupt succeeds in proving that the trustee knew of the existence of the books and papers before the expiration of the time fixed by the court under § 14(b)". *Id.* In short, absent good cause, new grounds for objecting to a discharge cannot be added even where "closely akin" to what has already been alleged, after the time for such objections has expired.

■ No reasons have even been suggested that would justify permitting the plaintiffs to add totally new grounds in no way even akin, let alone "closely akin", to their original complaint long after the time to object to discharge had expired. True, the Court raised no objection when Patel announced his intention to amend the complaint, but the Court did not and could not thereby extend plaintiffs' time to file objections to Ksenzowski's discharge, since no application for such extension had been made by plaintiffs prior to the expiration of 60 days from the § 341 meeting. Bankruptcy Rule 4004(b), 9006(c). The Bankruptcy Court has no discretion to grant such a request when it is made after the deadline has passed. *In re Tester, supra; In re Barr*, 47 B.R. 334, 336 (Bankr.E.D.N.Y.1985); *In re Lane*, 37 B.R. 410, 414 (Bankr.E.D.Va.1984). *See also, In re Figueroa*, 33 B.R. 298, 300 (Bankr.S.D.N.Y.1983).

■ Apart from the problems of pleading, the plaintiffs have failed to demonstrate a meritorious cause of action. That their amended complaint might have survived a motion to dismiss is not enough to support a Rule 60(b) motion. Merit must be affirmatively shown.

The recital in plaintiffs' moving papers on the merits of their claim only exposed its total lack of merit. That the plaintiffs are secured creditors or hold a promissory note constitutes no reason why the debtor is not entitled to a discharge of the underlying debt in bankruptcy, leaving the plaintiffs to collect on their security. The claim that the defendant has no legal grounds

and no reasons for filing for bankruptcy is, of course, absurd on its face. The sizable debt owed the plaintiffs constitutes reason enough for resort to bankruptcy. But no reason is needed for filing.

■ That the defendant lacks "certified accounts" or "documents to prove their debts or unpaid loans", does not forfeit his right to a discharge. "The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts". *In re Underhill*, 82 F.2d 258, (2d Cir.1936).

The assertion that the defendant has already filed a bankruptcy petition before this, while it must be accepted as true, for purposes of this motion, is inaccurate as to this defendant, as Patel knows. The allegation is true as to his partner, Usoskin, and Patel who filed an identical affidavit in both cases did not bother to eliminate from the affidavit filed in this case this allegation respecting Usoskin. Assuming, however, that it were true as to Ksenzowski, the fact that a debtor has previously secured relief under the bankruptcy laws, does not bar a second petition unless certain conditions are present, none of which are alleged here.

In sum, not only are plaintiffs' pleadings insufficient because no valid objection was filed within the time permitted, but the plaintiffs lack any meritorious objections to the defendant's discharge. The inference is inescapable that they have been prosecuting this adversary proceeding solely to prevent him from escaping his debt to them through bankruptcy.

■ The lack of a meritorious claim is fatal to a motion to reopen under Rule 60(b). *Davis v. Musler*, 713 F.2d 907 (2d Cir.1983); *Beshear v. Weinzapfel*, 474 F.2d 127, 132–133 (7th Cir.1973); *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970); *Moldwood Corp. v. Stutts*, 410 F.2d 351 (5th Cir.1969); *Atlantic Steamers Supply Co. v. International Maritime Supplies*, 268 F.Supp. 1009, 1011 (S.D.N.Y.1967); 7

Moore's *Federal Practice* ¶ 60.27[1] (2d Ed. 1978).

## III

### *The Order Vacating the Order of July 3, 1984*

 Since the plaintiffs have been unable to show either excusable neglect or merit, they were not entitled to have the Court's Order of July 3, 1984 closing the case set aside. In reopening the proceeding nevertheless on October 2, 1984, the Court acted in the mistaken belief that an attorney authorized to represent Ksenzowski had consented thereto. On discovering its mistake, the Court had the power to correct it. *In re Stirling*, 591 F.2d 148 (2d Cir.1978); *Flushing Savings Bank v. Parr*, 1 B.R. 453 (Bankr.E.D.N.Y.1979). A bankruptcy court, as a court of equity, always has the power to correct its own mistakes. *Flushing Savings, supra; cf. In re Avildsen Tools & Machines, Inc.*, 30 B.R. 911 (Bankr.N.D.Ill.1983) (federal rules vests power in courts to vacate orders so as to accomplish justice). The plaintiffs had no vested right in the court's error, nor were they prejudiced by its rectification. They were simply returned to the position they occupied before the mistake was made.

Furthermore, the result would have been the same whatever happened, since had the case been deemed reopened, the first order of business would have been defendant's motion to dismiss, which would have had to be granted for the reasons already stated.

This proceeding, having been properly closed on July 3, 1984, all motions subsequent to that date, except to reopen, are without force and need not be considered by the Court. But while the Court need decide nothing more to dispose of all the motions now pending before it, the Court will examine each on its merits exactly as though plaintiffs' application to vacate the Order of July 3, 1984 had been granted and

the Order of October 2, 1984, vacating the Order of July 3, 1984, still stood.

## IV

### *The Motion to Dismiss*

The defendant's motion to dismiss is predicated on two grounds: the inadequacy of the complaint and the failure to prosecute. Both grounds entitle the defendant to the relief he seeks.

For the reasons stated earlier, the complaint must be dismissed for failure to state a cause of action under § 727 within the time fixed by Bankruptcy Rule 4004.

 Apart from the inadequacies of the complaint, defendant was entitled to have the complaint dismissed for plaintiffs' failure to prosecute. Such dismissal is appropriate where a "party's practices exemplify flagrant bad faith or a counsel's conduct demonstrates a callous disregard for the responsibilities counsel owes to the court and to his opponents." *Jones v. Smith*, 99 F.R.D. 4, 6 (M.D.Pa.1983).[8]

Patel has shown just such callous disregard by serving a demand for the production of documents at his office and then promptly closing that office; by leaving on vacation and failing to advise either his opponent or the court that neither he nor his clients would appear for trial on the date fixed by the Court, April 30, 1984; by not ascertaining the status of the case on his return; and by not appearing on the adjourned trial date on June 7, 1984.

Any delay, even a few months, in the "fresh start" to which a debtor is entitled is prejudicial. When plaintiffs delayed defendant's discharge by not appearing for trial on April 30, 1984, and again not appearing on June 7th, defendant was entitled to have their objections to his discharge dismissed for failure to prosecute.

## V

### *The Plaintiffs' Omnibus Motion*

The bulk of plaintiffs' omnibus motion is covered by what has been said to this point.

---

**8.** FRCP 41(b) reads: *"Dismissal of actions. Involuntary dismissal: effect thereof.* For failure of the plaintiff to prosecute or comply with these Rules or any order of court, a defendant may move for dismissal of an action or of any claim against him...."

Two motions remain: the motion to disqualify Tauber and the motion for a default judgment against Ksenzowski.

## A.
### Motion to Preclude Robert Tauber, Esq. From Representing Defendant

Plaintiffs' grounds for asking that Tauber be barred from representing Ksenzowski are (1) that such a preclusion "would avoid additional confusion and misrepresentation" [9] and (2) that Patel wishes to interrogate Tauber with respect to when he was retained by Ksenzowski and that, as a potential witness, Tauber is disqualified from representing Ksenzowski.

The motion is without merit, the inference is almost inescapable that it is pressed solely for the strategic advantage disqualifying Tauber would give plaintiffs. Mr. Tauber's representation of Usoskin, whose proceeding in so many respects parallels the present case, has given him a familiarity with the facts that would be difficult and costly for another counsel to duplicate. Moreover, Ksenzowski, who has been forced to have recourse to the bankruptcy laws because of his straitened financial conditions, can be expected to have difficulty finding the money to retain someone else. The potential prejudice to Ksenzowski, by denying him the attorney of his choice, is self-evident.

▇▇▇ Considerations of just this character have prompted the Court of Appeals for this Circuit to lay down the rule that courts should be slow to disqualify attorneys since disqualification "has an immediate adverse effect on a client by separating him from counsel of his choice and that disqualification motions are often interposed for tactical reasons." *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979); cited in *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir.1980) (en banc). *See also, Bottaro v. Hatton Associates*, 680 F.2d 895 (2d Cir.1892).

▇▇▇ As the record of this Court shows, Tauber bears no responsibility for the error into which the Court fell of believing him in September, 1984, to be the attorney for both Usoskin and Ksenzowski. The Court's records show that prior to December 12, 1984 (when Mr. Koral was formally relieved as attorney for Ksenzowski and Tauber assumed his defense), Tauber never represented that he was acting as an attorney for anyone other than Usoskin. That the Court thought otherwise cannot be laid at Mr. Tauber's door. The error would no doubt have surfaced far earlier, but for the fact that Patel, while acting on the Court's advice that *Tauber* had agreed to reopen, nevertheless served *Koral*, not Tauber, with the orders to reopen in both the *Usoskin* and the within case (as though Koral was the attorney for both defendants), and then served no one, neither Koral nor Tauber, with notice of entry of the orders reopening the cases. If the "production of confusion" constituted a grounds for disqualification, it would be Patel, not Tauber that would be barred from participation in this case.

▇▇▇ Turning to the plaintiffs' contention that their desire to examine Tauber

---

9. Patel's Affirmation in support of this Motion reads in part:

> "The plaintiffs are now again shocked and surprised to know that the Mr. Robert Tauber, Esq. who first of all gave an impression to the court on September 14, 1984 that he is replacing Mr. Richard Koral for the defendant, then made a representation on October 25, 1984 that he is not authorised to represent this defendant. The same attorney now December 12, 1984 again represents to the court that he represent this defendant in case. How all such representation can be logically true. And if it is true then which one is true and which one is not wrong. The defendant and defendant's attorney Mr. Tauber is making all efforts to confuse the Hon. court and causing great prejudice to the legal rights of the plaintiffs in adjudication of justice in this case. In these circumstances, the plaintiff request to the Hon. Court that an Order may be made to preclude Mr. Tauber from appearing for this defendant in this legal proceeding."

Affirmation of December 27, 1984, ¶ 28.

Addressing this farrago briefly, that Tauber was not Ksenzowski's attorney on September 14, 1984 or on October 24, 1984 is entirely consistent with his being such attorney on December 12, 1984, after having been retained two days earlier by Ksenzowski.

bars him from continuing to represent Ksenzowski: first, Tauber's testimony might fall within the exceptions which permit an attorney to continue his representation of a client even when it appears he may be called as a witness (DR 5–101–B–4; DR 5–102–B); second, "ethical conflicts", the Second Circuit has said, cannot be resolved "through rulings in the course of litigation without inviting the wholesale filing of motions for tactical reasons.... [T]herefore, ... the remedy for unethical conduct [lies] in the disciplinary machinery of the state and federal bar". *Bottaro, supra,* at 896–97.

Finally, what Patel wishes to establish through examining Tauber (that Tauber was authorized to agree to the reopening of the proceeding), cannot affect the result. Tauber never waived in this case, as he did in *Usoskin,* assertion of the pending motion to dismiss which, for the reasons given earlier, would have to be resolved in defendant's favor in any event.

The motion is groundless and adds to the reasons why sanctions should be assessed against both Patel and his clients.

### B.

### *Motions for Judgment by Default*

What remains of plaintffs' omnibus motion are two requests which were previously denied by the Court after full consideration. Omitted from plaintiffs' papers are any reference to these prior adverse determinations.

On October 25th, 1984, when Ksenzowski did not appear for trial, the plaintiffs moved for a judgment by default which the Court denied.

On December 12th, 1984, over plaintiffs' strenuous objection, the Court gave the defendant, who had only retained Tauber two days earlier, additional time in which to file answering papers to plaintiffs' motion to reopen. The papers were due on December 7th; the Court gave Tauber to January 8th to file.

Plaintiffs now urge that Ksenzowski's absence on October 25th, 1984, and/or his failure to file answering papers to their motion to reopen on December 7th, 1984, entitle plaintiffs to a judgment by default.

■ In the interests of judicial economy, the Court will not repeat *in extenso* its reasons for denying plaintiffs' motion for a judgment of default because Ksenzowski did not appear on October 25th, 1984. As the Court previously noted, there is no reason to believe that this Russian-speaking, impecunious defendant, who had been representing himself *pro se,* had received any notice of the trial date contained in an order which Patel had served on no one, not on Ksenzowski, nor Koral, nor Tauber. Indeed, there is no reason to believe that Ksenzowski had any knowledge that plaintiffs had even moved to reopen the adversary proceeding, let alone that he knew an order granting plaintiffs such relief had been entered.

■ "[W]here the defendant did not have actual knowledge that the action was being prosecuted" relief from default judgment is appropriate. 6 Moore, *supra,* ¶ 55.10[2], p. 55–243; *U.S. v. $3,976.62 in Currency,* 37 F.R.D. 564 (S.D.N.Y.1965); *Rooks v. American Brass Co.,* 263 F.2d 166 (6th Cir.1959); 6 Moore, *supra,* ¶ 55.10[2], p. 55–243 and cases cited therein. F.R.C.P. 55, made applicable to bankruptcy proceedings by Bankruptcy Rule 7055, governs judgment by default. F.R.C.P. 55(b)(2) places the entry of default judgment within the sound discretion of the Court. 6 Moore, *Federal Practice,* ¶ 55.05[2], p. 55–52 (2d Ed.1976) (and cases cited therein).

Under the circumstances, Ksenzowski's failure to appear on October 25th, 1984—unlike Patel's failure to be present April 30th, 1984 or on June 7, 1984,—was the product of excusable neglect, justifying this Court in the exercise of its discretion in denying the request for a default judgment which it would only have later set aside.

■ The claim that plaintiffs are entitled to judgment because the defendant

served no answer to the motion to reopen within the time originally fixed by the Court, is so frivolous as to have no purpose except harassment. First, had no answering papers been submitted, plaintiffs would have been entitled at most, because of defendant's default, to an order reopening the case, not to a judgment on the merits. Second, the Court relieved Ksenzowski of the obligation to file on the date originally scheduled when it gave Tauber additional time to file. Third, it would have been a gross abuse of discretion to enter a default judgment based on a few days' delay, not shown to have resulted in any prejudice to plaintiffs in filing a reply to a motion. *Davis v. Parkhill-Goodloe Co.,* 302 F.2d 489 (5th Cir.1962) (refusal to grant default judgment for one-day delay in filing, affirmed, with the Court of Appeals holding that the trial court properly declined this "legalistic and highly technical request" for default judgment for an error of "such slight consequence"); *Moriani v. Hunter,* 462 F.Supp. 353 (S.D.N.Y.1978) (three-week delay in filing answering papers as a result of a mistake of fact, did not warrant a default judgment because the default was "merely technical" and did not prejudice the plaintiff); *999 v. Cox & Co.,* 574 F.Supp. 1026 (E.D.Mo.1983) (default not granted when no prejudice to plaintiffs established by four-day delay in filing of defendant's responsive motion). *See also, U.S. ex rel Houghton v. Scranton,* 257 F.Supp. 557 (E.D.Pa.1966).

Since plaintiffs present no new grounds for renewing requests previously decided against them, the reiteration of such requests constitute unjustified harassment and abuse of the processes of this Court, for which sanctions are appropriate.

## VI

### Sanctions Under FRCP 11 and Bankruptcy Rule 9011

Mr. Tauber, defendant's attorney, has asked that defendant be awarded $1,500.00 as sanctions because of the unjustified burden of the plaintiffs' complaint and the various motions placed on defendant.

The analog in bankruptcy to FRCP 11 is Bankruptcy Rule 9011 which provides that an attorney's signature to a document constitutes a certificate that to the best of the attorney's knowledge, information and belief the document "is well grounded in fact ... and ... not interposed for any improper purpose, such as to harass, to cause delay or to increase the cost of litigation," and that if a document is signed in violation of this Rule, the Court "on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction which may include, to the other party or parties, the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee."

The language of the statute is mandatory. It requires the judiciary to take affirmative action against violators who manipulate the court system. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 n. 7 (2d Cir.1985). Furthermore, since the 1983 amendment to Rule 11 "a showing of subjective bad faith is no longer required." *Ibid.* Rather, sanctions are to be imposed when a document has been interposed either for an improper purpose or where after reasonable inquiry, a competent attorney could not form a reasonable belief that the document was well grounded in fact or law.

There are multiple reasons why sanctions should be imposed in this case, but the Court will limit itself to only a few: (1) the plaintiffs' demand for the production of documents, with which plaintiffs' attorney, himself, rendered compliance impossible; (2) the plaintiffs' attorney's false claim that an adjournment of the April 30, 1984 trial date was obtained; (3) the false affidavit of service executed by plaintiffs' attorney; and (4) the plaintiffs' demand for a default judgment based on the defendant's alleged failure to answer the amended complaint when plaintiffs' attorney knew or could have easily ascertained that such an answer had been filed.

An attorney has the responsibility to deal frankly and honestly with the court. The trust and confidence placed in attorneys by the Court depends upon their deserving such trust and confidence. Patel has shown himself indifferent to the accuracy of the representations he makes to this Court. He has cast a great burden on both the Court and the litigants and the sanctions called for by Bankruptcy Rule 9011 are appropriate.

## A.

### *The Demand for Discovery*

On March 24, 1984, plaintiffs' attorney, Patel, left for vacation in India and closed his office. Just before leaving, he mailed a demand to Koral that there be produced, in Patel's office within the next 30 days, a long list of documents. The copy of this document, mailed to the court, arrived March 26, 1984, two days after Patel had closed his office. It can be presumed that Koral received it not much earlier. Since Patel knew that there was no way that the defendant could comply with the demand during Patel's absence, such a demand could only have been interposed to harass, delay and increase the burden of the litigation to Ksenzowski, which it did. See Koral's "Affirmation in Support of Defendant's Motion to Dismiss", dated May 1, 1984.

## B.

### *The Claims that Patel had Adjourned The April 30, 1984 Trial Date*

Recognizing the seriousness of his absence from court on April 30th, 1984, the scheduled trial date, Patel has furnished several explanations for his absence, mutually exclusive and all untrue. In one of his affirmations, Patel claims he advised the Court in advance of his departure that he would be gone until May 14th.

> [P]laintiff's attorney was on vacation to India from March 23, 1984 to May 14, 1984 ... [P]laintiff's attorney disclosed this vacation plan to the court and the defendant's (sic) attorney when the mat-

ter of this civil action was on calender (sic) of the Court *in March, 1984."* (Emphasis supplied).

Plaintiff's Reply Affirmation, August 10, 1984, para. 7

This statement does not conform with the facts. First, neither this case, nor *Usoskin* case was on the Court's calendar in March, 1984. Second, this Court would not have scheduled the trial for April 30th if Patel had advised the Court that he was going to be away on that date.

Elsewhere, Patel makes the very different claim that he applied from India for an adjournment.

> "On April 30, 1984, the plaintiff's attorney was in India and therefore the plaintiff's attorney submitted an application for an adjournment of this adversary procedding (sic), and this application was granted and this case was adjourned. But thereafter, the plaintiff's attorney did not receive any new date of trial and hearing."

Plaintiff's Application to Set Aside Default, 7/26/84, para. 10.

> "The plaintiff's attorney was in India on April 30, 1984. The plaintiff's attorney therefore *mailed an application for an adjournement* (sic) *from India* to the Honorable Court and this application was received by the Court." (Emphasis supplied).

Plaintiff's Affirmation in Opposition, 12/3/84, para. 6 & 8

The records of this Court reflect no request for an adjournment and the Court is satisfied that none was made. The affirmation signed by Patel to the contrary is not well grounded in fact, as is necessarily known to Patel.

## C.

### *The False Certificate of Service of Plaintiffs' Omnibus Motion*

On January 2, 1985, Patel filed with the Court what has been referred to herein as the plaintiffs' omnibus motion which was accompanied by an affidavit signed by Pa-

tel that he had served the paper on Tauber by mail on December 28, 1984, *and* personally on December 31, 1984. The affidavit reads:

"STATE OF NEW YORK, COUNTY OF NEW YORK,

M.D. Patel, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and resides at 1225 Broadway, New York, NY 10001.

On December 28, 1984, the deponent served the within plaintiff's Notice of Motion to upon Robert Tauber, Esq., attorney(s) for defendent (sic) in this action, at 26 Court Street, Brooklyn, N.Y. 11242, the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a post-paid properly addressed wrapper, in—a post office—official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

On December 31, 1984, at 26 Court Street, Brooklyn, N.Y. 11242, deponent served the within Notice of Motion upon Robert Tauber, Esq., attorney for defendent (sic) herein, by delivering a true copy thereof to h (sic) personally. Deponent knew the person so served to be the person mentioned and described in said paper as the therein.

Sworn to before me on December 28, 1984.

Under penalty of perjury.

M.D. Patel."

At the hearing on January 30th, it was discovered that Tauber had never received most of the papers in question and that the affidavit of service was a mosaic of misleading statements. Patel, in fact, served Tauber neither by mail, nor personally. What Patel claims to have done was to insert the papers in an envelope and thrust them through the door of Tauber's office at 3:00 p.m. on December 31st. (Tr. 1/30/85, pp. 22–30). This admission led to the following colloquy:

THE COURT: ... "This affidavit says— you're an attorney, you can read English. This says that you delivered it to him personally.

MR. PATEL: Your Honor, it was prescribed forms, I forgot to make a change.

THE COURT: Prescribed forms is no excuse, Mr. Patel. Attorneys change prescribed forms. If you have a form that doesn't fit you, you don't sign it.

Furthermore, it says here in addition to saying that you served him personally, it says:

'On December 28, 1984, deponent served within plaintiff's notice of motion upon Robert Tauber, attorney for defendants in this action, the address designated for said attorney for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper in a postoffice in the exclusive care and custody of the United States Postal Service.'

MR. PATEL: That was cancelled.

THE COURT: That's right, but all you have to do, is cross it out. The correct thing is to cross it out. The correct thing is not to sign it under penalty of perjury.

MR. PATEL: Your Honor, I was in a rush.

THE COURT: Mr. Patel, as an officer of the court the fact that you're in a rush is no excuse."

Transcript, 1/30/85, pp. 31–32.

Because Tauber stated that he, in fact, never received the papers which were supposedly pushed through his mail slot on New Year's Eve, an adjournment of the hearing was necessary and the papers that Tauber had previously filed (as a reply to Patel's Notice of Motion) were rendered valueless.

The certificate of service which Patel filed with the court was false, was known by Patel to be false when he signed and filed it and reflects an absolute contempt for his responsibility as an officer of the court.

## D.

*The Demand for a Default Judgment
Predicated on the Lack of
an Answer*

In Patel's most recent papers, he repeatedly demands that a judgment by default be entered against the defendant for failure to file an answer to the complaint. Patel appears to be seeking to take advantage of the fact that Tauber, brought into this case many months after it started, labored under the misapprehension that no answer to the amended complaint had been filed. Patel knows or should know better, however. At the pre-trial on February 7, 1984, the Court stated that judgment by default would be entered against the defendant unless he filed an answer by February 22, 1984, which he did. On January 30, 1985, Patel demonstrated his knowledge of that answer by holding up a copy of it and saying:

"MR. PATEL: This is a copy of the answer that he [Ksenzowski] filed in the court and me the copy by mail, with the envelope signed by Mr. Ksenzowski. I received it on February 27, 1984."

Transcript, 1/30/85, p. 27.

Nevertheless, Patel has repeatedly demanded judgment by default because no answer was served. His affirmation of March 4, 1984 reads in part:

"Defendant has failed to file any answer to plaintiff's complaint. The defendant is in default and a default judgment must be entered against the defendant." para. 5.

"... and defendants has failed to file any answer to defend plaintiff's complaint ... and therefore the plaintiff's motion must be granted ..." para. 10.

The same misstatements were made on March 7, 1985 when Patel asserted

"... and the defendents failed to serve any answer to the complaint up to this date when Mr. Tauber come into the picture on his behalf ... up to one year the

defendents never filed any answer to the amended complaint."

Transcript, 3/7/85, p. 42.

Repeatedly, Patel insisted that his clients were entitled to a default judgment because of the defendant's failure to file an answer. "My client entitled to remedy to have the default judgment against any party or defendant who failed to answer the amended complaint." Transcript, 3/7/85, p. 61–62.

Taking the kindest view of the facts, it may be that Patel has so forgotten what occurred here as to believe that the answer filed February 22, 1984 is an answer to the original complaint, but an attorney is responsible for misstatements which reasonable inquiry would have disclosed to be such. Any comparison of the pleadings in this case would have shown that Ksenzowski's answer was to the amended complaint.

What Patel has done, therefore, is to misstate the record and then demand affirmative relief on the basis of such misstatement. This is exactly the type of conduct which invites sanctions.

The foregoing constitute simply a small sample of the misstatements to be found in Patel's papers. The confusion he has created has delayed the resolution of this case while the Court has searched the record to ascertain the facts.

In these circumstances, the sanctions requested by Mr. Tauber appear to this Court to be appropriate, bearing in mind that the burden of dealing with the plaintiffs' improper conduct has been imposed on a defendant lacking entirely the financial means with which to combat them.

Therefore, sanctions are hereby imposed on plaintiffs and their attorney pursuant to Bankruptcy Rule 9011, 28 U.S.C. § 1927 and the general equitable powers of the Court, including but not limited to, the award of reasonable attorneys' fees, payable by plaintiffs and their attorney who are jointly and severally liable therefor.

A hearing will be held on Friday, December 13, 1985 at 10:00 in the forenoon at the

**838**

United States Bankruptcy Courthouse for the Eastern District of New York, 75 Clinton Street, Brooklyn, New York 11201, Courtroom 214, to determine the full amount of such sanctions.

A judgment consistent with this Opinion is being issued contemporaneously.